IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CARL R. BOATNER                                                                    PLAINTIFF

VS.                                                      CIVIL ACTION NO. 3:14cv912-FKB

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY                                                            DEFENDANT

## OPINION AND ORDER

### I. Introduction and Procedural History

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration.  Presently before the Court is Plaintiff's motion for summary judgment [10] and the Commissioner's motion to affirm [12].  Having considered the motions and briefs, the Court concludes that the Plaintiff's motion should be denied and the Commissioner's motion granted.

Plaintiff, Carl R. Boatner, was born on December 24, 1965, and was 47 years of age at the time of the decision of the ALJ.  He has a ninth grade education and past relevant work experience as a truck driver.  Boatner filed for supplemental security income (SSI) on August 19, 2011, alleging disability due to anxiety, depression, obesity, heart attack, back problems, tuberculosis, hepatitis, pancreatitis, and diabetes.  His applications were denied initially and on reconsideration.  He requested and was granted a hearing before an administrative law judge (ALJ).   The ALJ issued a decision finding that Boatner is not disabled.  The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner.  Boatner then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

Boatner's medical record reveals a history of cardiovascular disease, polysubstance abuse, hypertension, poorly-controlled diabetes, obesity, low back pain, depression, and anxiety.  An MRI in 2002 revealed small strokes.  R. 619, [9] at 623.  He has had several myocardial infarctions, the most recent occurring in 2008, and has had several stent placements.  He has hepatitis C, although there is no indication of ongoing problems or treatment.

In January of 2011, Boatner was admitted for psychiatric treatment at East Mississippi State Hospital (EMSH) pursuant to a commitment order after expressing suicidal ideations and exhibiting memory problems, withdrawal, outbursts of anger, and poor judgment.  R. 331-36, [9] at 335-40.  He was placed on Celexa.  *Id.*  Upon discharge approximately one month later, his discharge diagnoses were as follows: Axis I, depressive disorder NOS, anxiety disorder NOS, and history of methamphetamine abuse; Axis II, none; Axis III, hypertension, chronic obstructive pulmonary disease, diabetes, chronic back pain, chronic ischemic heart disease, GERD, a history of pancreatitis, hyperlipidemia, and morbid obesity; Axis IV, conflict with primary care provider; and Axis V, a Global Assessment of Functioning (GAF) of 55.  R. 335, [9] at 339.  Thereafter he began treatment at Weems Community Health Center (Weems).  As of the time of the hearing, Boatner continued to receive individual therapy at Weems and to be treated with Celexa, Xanax, Trazodone, and Buspar for his depression and anxiety.

On October 21, 2011, Boatner presented to the emergency room complaining of
neck and back pain following an automobile accident.  R. 432, [9] at 436.  Xrays of the
spine revealed mild degenerative changes at T12, L3, and L4.  434, [9] at 438.

Since 2011, Boatner's primary care physician has been  Dr. Doug Perry at Walnut
Grove Medical Associates (Walnut Grove), where Boatner receives prescriptions for
Plavix (an anticoagulant), Lortab for back pain, glyburide and metformin for his diabetes,
Lovastatin for disylipidemia, and hydrochlorothiazide and Lisinopril for hypertension.

In May of 2012, Boatner was admitted to the hospital for two days after presenting
to the emergency room with increased shortness of breath after exposure in a hay field.
R. 711, [9] at 715.  His glucose at admission was 515.  *Id.*  Discharge diagnoses were
reactive airway disease, uncontrolled diabetes, hypertension, and arteriosclerotic
cardiovascular disease.  *Id.*

Debra Casey, Boatner's therapist at Weems, completed a statement for the state
disability agency on September 7, 2011.  Ms. Casey identified Boatner's diagnoses as
depressive disorder NOS and anxiety disorder NOS.  R. 382, [9] at 386.  Ms. Casey rated
as good Boatner's ability to function independently,  understand, remember, and carry out
both simple and complex instructions, and maintain personal appearance.  R. 383, [9] at
387.  She opined that he has a fair ability to follow work rules, relate to coworkers, use
judgment, maintain attention and concentration, relate predictably in social situations, and
demonstrate reliability.  *Id.*  Ms. Casey rated as poor Boatner's  ability to deal with the
public, interact with supervisors, deal with work stresses, and behave in an emotionally
stable manner.  *Id.*  Specific problems identified by Ms. Casey were a short attention

span, poor focus, poor impulse control, and poor anger control.  R. 383-84, [9] at 387-88.

When asked to describe any limitations that would prevent Boatner from sustaining work

activity, Ms. Casey identified episodes of depression and anxiety.  R. 384, [9] at 388.

Ms. Casey completed a second form on February 6, 2012, in which she listed

Boatner's diagnoses as depressive disorder NOS, anxiety disorder NOS, polysubstance

abuse by history, and benzodiazepine dependence.  R. 458, [9] at 462.  She rated as

good Boatner's ability to use judgment, interact with supervisors, function independently,

understand, remember, and carry out all levels of job instructions, and maintain personal

appearance.  R. 459, [9] at 463.  Ms. Casey indicated that Boatner has a fair ability to

follow work rules, relate to coworkers,  deal with the public, behave in an emotionally

stable manner, relate predictably in social situations, and demonstrate reliability.  *Id.*  She

stated that his abilities to deal with work stresses and maintain attention and

concentration are poor.  *Id.*  According to Ms. Casey, Boatner has a short attention span,

problems with impulse and anger control, and is subject to panic attacks.  R. 459-60, [9] at

463-64.  When asked to describe any limitations that would prevent Boatner from

sustaining work activity, Casey identified a history of depression and panic attacks.  R.

460, [9] at 464.

The record contains a Psychiatric Review Technique Form (PRTF) and a Mental

Residual Functional Capacity Assessment (MRFCA) completed by Dr. Glenda Scallorn, a

non-examining consultant, in September of 2011.  On Section I the PRTF, Dr. Scallorn

indicated that Boatner has moderate difficulties with activities of daily living, maintaining

social functioning, and maintaining concentration, persistence, or pace.  R. 395, [9] at

399.  She indicated that Boatner has had one or two episodes of decompensation of extended duration.  *Id.*  As to Boatner's mental RFC, Dr. Scallorn opined in the narrative portion of the MRFCA (Section III) that Boatner can understand and follow simple directions and is capable of appropriate interactions with the public, although he would function better with limited public interaction, and that he is capable of adapting to slow routine work changes and could complete a work week without excessive interference from psychologically-based factors.  R. 401, [9] at 405.

On December 22, 2011, Dr. Abraham Oyewo, a non-examining consultant, completed a physical RFC assessment form.  Dr. Oyewo opined that Boatner can lift 20 pounds occasionally and 10 pounds frequently, can stand and walk for 6 hours, can sit for 6 hours, and has no limitations on pushing and pulling.  R. 450, [9] at 454.  Dr. Oyewo identified no other limitations.  R. 450-53, [9] at 454-58.

Dr. Theodore Okechuku performed a consultative physical exam of Boatner on November 15, 2011.  Upon examination, Boatner was short of breath and had an unstable gait.  R. 423, [9] at 427.  He had mild difficulty getting on and off the exam table and up and out of a chair.  *Id.*  Examination revealed mild lumbosacral tenderness.  R. 424, [9] at 428.  Straight leg raising was positive.  *Id.*  Boatner was unable to walk on his heels.  *Id.*  Boatner had a loss of sensation to touch and needle prick in the dorsum of both hands up to the wrist and in both feet to the ankles.  *Id.*  Dr. Okechu identified Boatner's conditions and rated them as follows: Coronary artery disease and status post placement of coronary stents (a moderate to severe impairment), low back pain with radiculopathy (moderate impairment), hypertension (moderate impairment), a history of tuberculosis, diabetes with

neuropathy, a history of pancreatitis and hepatitis B, and obesity.  R. 424-25, [9] at 428-29.

Physical and mental RFC assessment forms were completed on April 9, 2012, by Dr. William Perry, Boatner's treating physician.  Dr. Perry indicated that Boatner can occasionally and frequently lift less than 10 pounds, that he can stand and walk for two hours, and that he has no limitations on sitting.  R. 489, [9] at 493.  He can occasionally twist, climb stairs, and climb ladders, and he can never stoop or crouch.  R. 491, [9] at 495.  Dr. Perry stated that Boatner has no limitations on reaching, handling, fingering or feeling and no environmental restrictions.  R. 491-92, [9] at 495-96.  Dr. Perry estimated that Boatner would, on the average, miss two days of work per month.  R. 493, [9] at 497. On the mental RFC assessment, Dr. Perry rated Boatner's ability as fair in all categories except for working near others without distractions; understanding, remembering, and carrying out detailed instructions; and traveling in unfamiliar places, and using public transportation, for which Dr. Perry rated his ability as poor.  R. 495-97, [9] at 499-501.

At the hearing, Boatner testified that he was 47 years of age, 5'10" in height, and weighed approximately 240 pounds.  R. 106-07, [9] at 110-11.  He explained that he had recently lost about 30 pounds due to illness.  R. 107, [9] at 111.  He quit school after the ninth grade.  R. 108, [9] at 112.  Boatner has no money and no source of income and does not receive food stamps.  R. 110, [9] at 114.  He sleeps in a trailer owned by a friend and spends his days up at the friend's house watching television.  R. 106, 114-15, [9] at 110, 118-119.  He cannot see to read.  R. 128, [9] at 132.  Boatner's friends provide food and cigarettes for him.  R. 110, 116, [9] at 114, 120.  He does not have a driver's license

6

and cannot see to drive; his friends give him rides when he needs to go somewhere.  R. 107-08, [9] at 111-12.  Boatner does not like to be around many people at a time because he becomes too nervous.  R. 118-19, 126, [9] at 122-23, 130.   His medication for depression and anxiety helps him, but he has problems affording it.  R. 114-16, [9] at 118-20.  To cope with his depression, he sometimes has a friend come over or plays with the grandchild of a friend.  R. 128-29, [9] at 132-33.  Boatner estimated that he could sit for less than an hour at a time and can walk about 30 feet without resting.  R. 117, 120, [9] at 121, 124.  He cannot bend and stoop because of pain in his back and shoulders, and he cannot squat because of pain in his left leg.  R. 120-21, [9] at 124-25.  He cannot reach down to tie his shoes.  R. 115-16, [9] at 119-20.  Boatner takes pills for his diabetes but does not check his glucose level himself; instead, he occasionally goes to the emergency room to have it checked.  R. 111, [9] at 115.

Also testifying at the hearing was Donald E. Woodall, a vocational expert (VE).  The VE stated that Boatner's past relevant work was a truck driver, which is classified as medium semi-skilled work.  The ALJ posed the following hypothetical to the VE: An individual 45 years of age, with the same vocational history as Boatner, who can perform light work, except that he cannot be around dust fumes, gases, or noxious odors, cannot work on heights or around hazardous equipment or machinery, can stand and walk six hours in a regular work day, can sit six hours, needs a sit/stand option, has no contact with the general public, is limited to non-confrontational supervision, is limited to simple work instructions, and who can adjust to general changes in the work routine.  R. 134-35, [9] at 138-39.  The VE responded that such an individual could perform other work, and

he identified the representative jobs of bench assembler, small parts assembler, and laundry folder.  R. 135, [9] at 139.

Boatner's attorney offered three additional hypotheticals.  In the first, he described a person with the same characteristics as those in the ALJ's hypothetical, except that he could lift and carry less than 10 pounds occasionally and frequently, could stand and walk two hours, sit six hours, could never stoop, and would miss work approximately twice a month. R. 136, [9] at 140.  The VE responded that there would be no work available for such a person.  R. 137, [9] at 141.  The attorney then altered the ALJ's hypothetical by stating that the individual would be unable to deal with the general public, interact with coworkers and supervisors, or behave in an emotionally stable manner.  *Id.*  Again, the VE responded that there would be no work for such a person.  *Id.*  In a final hypothetical, the attorney described a person with the same characteristics as in the ALJ's hypothetical, except that he would be moderately limited in the following areas: maintaining attention and concentration for extended periods, working around others without being unduly distracted, making simple work decisions, completing a work week without interruptions from psychologically-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods, and who because of these limitations would have a 20-25 percent reduction in productivity.  *Id.*  The VE responded that no work would be available for such an individual.  R. 137-38, [9] at 141-42.

8

### III.  **The Decision of the ALJ and Analysis**

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1]  He found that Boatner has the severe impairments of obesity, chronic obstructive pulmonary disease, status post myocardial infarction, status post stent placement, status post cerebral vascular accident, low back pain, uncontrolled diabetes, and depressive disorder.  R. 14, [9] at 18.  At step three, the ALJ determined that Boatner does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 14-17, [9] at 18-21.  The ALJ found that Boatner has the residual functional capacity to perform light

---

[1]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)    whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

work, as defined by 20 C.F.R. § 416.967(c), except that he requires a sit/stand option, cannot work around dust, fumes, and gaseous odors, cannot work around heights or hazardous machinery or equipment, cannot work with the general public, and is limited to jobs with simple work instructions and non-confrontational supervision.  R. 17, [9] at 21. He considered Boatner's subjective allegations of pain and limitations but found that they were not fully credible in light of the medical evidence.  R. 18, [9] at 22.   At step four, the ALJ found, based upon the testimony of the VE in response to the first hypothetical, that Boatner cannot return to his work as a truck driver but that there is alternative work that he is capable of performing.  R. 24-25, [9] at 28-29.  He therefore determined that Boatner is not disabled.  *Id.*

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2] Boatner makes several allegations of error.

*Anxiety Disorder.*  Boatner first argues that the ALJ erred by failing to find that his anxiety disorder was a severe impairment.  In connection with this argument, Boatner

---

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ."  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed,  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

points out that the ALJ quoted the wrong standard for determining whether an impairment is severe.  The ALJ defined a severe impairment as one that "significantly limits an individual's ability to perform basic work activities," and he defined a non-severe impairment as one that is a slight abnormality "that would have not more than a minimal effect on an individual's ability to work."  R. 13, [9] at 17.  The definition of severe impairment used by the ALJ is derived from 20 C.F.R. § 920(c).  As Boatner points out, the Fifth Circuit held in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), that this definition is inconsistent with the Social Security Act.  The correct severity standard, as formulated by the Fifth Circuit, is as follows:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Stone,* 752 F.2d at 1101.  Moreover, the *Stone* court stated that in the future, it would assume that the ALJ had applied an incorrect standard "unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction [given by the *Stone* court] to [20 C.F.R. § 416.920(c)] is used."  *Id.* at 1106.[3]

The ALJ's definition of a severe impairment did not comport with *Stone.*  Neither did his definition of a non-severe impairment comport with *Stone's* requirements. This court has previously found that the definition of a non-severe impairment as a slight

---

[3]*Stone* was a disability insurance benefits case, rather than an SSI case, and therefore cited the identical section from the disability insurance regulations, 20 C.F.R. § 404.1520(c).

11

abnormality that has only a minimal effect on the ability to work is not equivalent to the *Stone* standard, as while *Stone* allows for a minimal effect on the *individual*, it allows for no interference with the *ability to work*. *See*, *e.g.*, *Ireland v. Colvin*, 2013 WL 4804842 *5 (S.D. Miss. Sept. 9, 2013). Nevertheless, *Stone* only created a presumption, and where the decision of the ALJ otherwise indicates that he applied the correct standard, or where the substantial rights of the plaintiff are not affected, reversal is not required. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also LeBlanc v. Chater*, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996) (unpublished table decision) (per curiam).

    In the present case, while the ALJ quoted an incorrect standard and failed to include Boatner's anxiety disorder in his list of severe impairments, it is clear elsewhere in the opinion that he considered Boatner's anxiety and determined that it did indeed affect Boatner's RFC, finding Boatner to have moderate limitations in the areas of social functioning and concentration, persistence and pace, to be precluded from work with the general public, and to require non-confrontational supervision. Thus, Boatner cannot show that his rights were violated or that he was prejudiced by the ALJ's citation of an incorrect standard or the omission of anxiety in his list of Boatner's severe impairments. Accordingly, this allegation of error provides no basis for reversal.

    *Episodes of Decompensation.* On her mental RFC assessment, Dr. Scallorn indicated that Boatner had suffered one or more episodes of decompensation of extended duration. The ALJ found, however, to the contrary. Boatner argues that the ALJ erred in

12

rejecting this portion of Dr. Scallorn's opinion without explaining his rationale, as required by SSR 96-6.

This argument is without merit.  Boatner's only arguable episode of decompensation was that associated with his commitment to EMSH in January of 2011. The ALJ pointed out in his decision that when Boatner was discharged, he was in fair condition and was having no suicidal or homicidal ideas.  The ALJ also observed that Boatner had experienced no other episodes since his discharge and that the medical evidence indicated that his symptoms were controlled by medication.  The Court concludes that the ALJ adequately explained his finding on this issue and that there was no error.

*Mental Limitations and RFC.*  Boatner argues that the ALJ erred by failing to consider all of Boatner's mental limitations as identified by Dr. Scallorn and Ms. Casey. He points out that in Section I of the Mental Residual Functional Capacity Assessment (MRFCA), Dr. Scallorn indicated that Boatner is moderately limited in 11 of 20 occupational categories, including the following: Maintaining attention and concentration for extended periods, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically-based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, and responding appropriately to changes in the work setting.   Boatner also argues that the ALJ erred by failing to consider or rejecting Ms. Casey's opinions that

13

Boatner has a short attention span, is impulsive, has anxiety attacks, has poor focus, and has poor anger control.

Concerning Dr. Scallorn's opinion, the ALJ explained that he did not adopt all of her findings because her opinion was rendered before Boatner's more recent treatment at Weems, the records of which indicate that Boatner's symptoms are controlled by his medication.   Furthermore, as the SSA has explained in its Program Operations Manual System (POMS), Section I of the MRFCA is merely a worksheet for the recording of the mental health professionals "summary conclusions"; it does not constitute the mental RFC assessment.  POMS DI 24510.060, available at https://secure.ssa.gov/apps10/; Rather, the actual mental RFC assessment is contained in the narrative set out in Section III of the form.  *Id.*, *see also Crimm v. Colvin*, 2014 WL 4964249 at *2 (S.D. Miss. Sept. 30, 2014.  The ALJ's conclusion that Boatner should be limited to simple work that does not require interaction with the public and that is performed in an environment of non-confrontational supervision is fully consistent with Dr. Scallorn's mental RFC assessment as set forth in Section III of the MRFCA.

As to Ms. Casey's opinion, the ALJ did not reject it in its entirety.  Rather, he stated that he gave "some weight" to the functional limitations identified by Ms. Casey.  R. 24, [9] at 28.  Again, the ALJ's conclusions as to Boatner's RFC are consistent with the ALJ's having given some weight to Ms. Casey's opinions as to Boatner's problems with anger and impulse control, focus and concentration, and anxiety.

The ALJ was not required to adopt as his own findings each and every one of the limitations identified by the medical sources.  The determination of RFC is the province of

the ALJ.  *Ripley v. Chater*, 67 F.3d 552, 557 (5ᵗʰ Cir. 1995).  The ALJ adequately

explained the weight given to the opinions of Dr. Scallorn and Ms. Casey, and there is no

error.

    *Consideration of Medical Evidence.*  Boatner next argues that the ALJ failed to

properly consider certain medical evidence in the record.  Ms. Casey opined that

Boatner's history of depression and anxiety attacks would prevent him from sustaining

work activity.  The ALJ gave little weight to this opinion, noting that Ms. Casey was not an

acceptable medical source and that her opinion was inconsistent with her own findings.

Boatner argues that the ALJ erred because he rejected Ms. Casey's opinion without

evaluating it as required by SSR 06-3.

    Under the regulations, "acceptable medical sources" include treating physicians,

psychiatrists, and psychologists, while health care professionals such as nurse

practitioners and therapists are categorized as "other sources."  20 C.F.R. § 416.913(a).

Only an acceptable medical source may provide a diagnosis of a medically determinable

impairment.  *Id.*  Other sources, however, may provide evidence concerning the severity

of an impairment and its effect upon a claimant's ability to work.  20 C.F.R. § 415.913(d).

SSR 06-3 explains that evidence from other medical sources must be evaluated, and in

an appropriate case they may be entitled to more weight than an acceptable medical

source.  SSR 06-3, 2006 WL 2329939 (SSA 2006).

    Boatner's argument as to Ms. Casey is based upon his premise that the ALJ

rejected Ms. Casey's opinion solely because it was not an acceptable medical source.

This premise is incorrect.  The ALJ evaluated the opinion and, as stated *supra*, gave

portions of it some weight.  But as to Ms. Casey's opinion that Boatner's depression and anxiety were disabling, the ALJ found it to be inconsistent with the other evidence of record, including her own opinion.  This evaluation satisfied the requirements of SSR 06-3.

As to Dr. Okechuku, Boatner complains that the ALJ gave no weight to his opinion that Boatner's coronary artery disease is severe and little weight to his opinion that Boatner's low back pain is a moderate impairment with regard to his ability to stand, bend, stoop, squat, reach, push, and pull.  An ALJ is entitled to reject the opinion of any physician if the evidence supports a contrary conclusion.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  The ALJ explained that the reason he gave no weight to Dr. Okechuku's opinion concerning Boatner's coronary artery disease was that Dr. Okechuku is not a cardiologist and examined Boatner only once.  He justified the weight given to Dr. Okechuku's opinion on Boatner's back pain by pointing out that it was not supported by diagnostic testing and was inconsistent with the other medical evidence.  The ALJ satisfied his duty to explain the weight given to Dr. Okechuku's opinion.

Finally, Boatner argues that the ALJ gave only  "little weight" to the opinion of Dr. Perry, Boatner's treating physician, without performing the analysis required by *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).  *Newton* provides that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."  209 F.3d at 453 (emphasis in original).  The portion of Dr. Perry's

opinion to which the ALJ gave little weight was the opinion that Boatner was limited to sedentary work because of his heart condition. The ALJ explained that this opinion was inconsistent with the recent clinical findings of record, including those of Dr. Perry himself, that indicate Boatner has no current cardiovascular symptoms.  Given this inconsistency, the ALJ's analysis and explanation of the weight given to this portion of Dr. Perry's opinion was sufficient.

*Finding as to Boatner's Educational Level.*  Boatner contends that the ALJ erred in relying upon the VE's testimony in response to the ALJ's hypothetical because the hypothetical assumed an individual with a ninth grade education, whereas in his opinion the ALJ found that Boatner has only a marginal education.  It is true that in reciting Boatner's education, the ALJ described it as marginal.  R. 24, [9] at 28.  But all of the evidence of record indicates that Boatner does in fact have a ninth grade education. Thus, the fact that the ALJ erred in his statement of Boatner's educational level is of no consequence, as he included Boatner's true educational level in the hypothetical. Procedural perfection in ALJ's decision-making process is not required, as long as the substantial rights of the plaintiff have been affected.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Because Boatner cannot show prejudice from the ALJ's misstatement, it provides no basis for reversal.

## IV.  Conclusion

The Court concludes that the ALJ's decision is supported by substantial evidence and that there were no legal errors requiring reversal.  Accordingly, Boatner's motion is

17

denied, the Commissioner's motion is granted, the decision of the Commissioner is affirmed.

A separate judgment will be entered.

So ordered and adjudged, this the 28th day of March, 2016.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE